IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DELANO J. WILLIAMS,** | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 21-CV-1813 |
| | : | |
| **KYLE RUSSELL**, *et al.*, | : | |
| Defendants. | : | |

**MEMORANDUM**

**KENNEY, J.**                                                                                                           **AUGUST 4, 2021**

Currently before the Court is an Amended Complaint filed by Plaintiff Delano J. Williams, pursuant to 42 U.S.C. § 1983, raising constitutional claims based on conditions in which he was previously confined at the Lehigh County Jail ("LCJ"). For the following reasons, the Court will dismiss Williams's Amended Complaint pursuant to 28 U.S.C. § 1915A(b)(1), for failure to state a claim and give him another opportunity to amend.

**I.      FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY**

Williams's initial Complaint named the following Defendants in their individual and official capacities: (1) Kyle Russell, Warden of LCJ; (2) Robert McFadden, identified as Deputy Warden for Security; (3) Steven Miller, identified as Deputy Warden for Treatment; and (4) a Jane Doe/John Doe "Medical Supervisor/Manager." (ECF No. 2 at 2-3.)[1] Williams alleged that he injured his eye while using a desk to ascend to a top bunk bed that lacked a ladder, and that he did not receive follow up treatment for his injury as ordered by the eye doctor. The Court construed the Complaint as raising constitutional claims for unconstitutional punishment and deliberate indifference to medical needs.

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

1

In a May 27, 2021 Memorandum and Order, the Court screened the Complaint pursuant to 28 U.S.C. § 1915A(b) and dismissed it for failure to state a claim. (ECF Nos. 6 & 7.) First, the Court dismissed all claims against the Defendants in their official capacities because Williams failed to allege that the claimed constitutional violations stemmed from a municipal policy or custom. (ECF No. 6 at 4-5.) Next, the Court concluded that Williams could not state a claim based on the absence of ladders for ascending to the top bunk bed, which he indicated was the cause of his fall, because that condition at most amounted to negligence and did not support a plausible constitutional violation. (*Id.* at 6.) Finally, the Court concluded that Williams failed to state a claim for deliberate indifference to his serious medical needs because he failed to allege facts showing that "any of the named Defendants acted with deliberate indifference or were personally involved in the denial, delay, or prevention of follow up care that was ordered by the doctor." (*Id.* at 8.)

Williams was given leave to file an amended complaint and was granted an extension of time in which to do so. (ECF Nos. 7 & 9.) He filed an Amended Complaint naming the following Defendants: (1) Warden Kyle Russell; (2) Lehigh County Prison; (3) Unknown Facility Safety Manager; and (4) Unknown Medical Supervisor/Contractor. (ECF No. 10 at 1-3.) Williams alleges that the events giving rise to his claims took place on or about November 24, 2019 through December 9, 2019. (ECF No. 10 at 4.) He alleges, as he did in his initial Complaint, that while he was "climbing up to the top bunk, that had no ladder forcing him to step on the desk and pull [himself] up with no hand rail to assist [him]" he slipped and fell, splitting his eye on the corner of the bed frame. (*Id.* at 5.) Williams split his eyebrow, eyelid, and upper cheek area, bruised his cornea, and received eight to ten stitches for his injuries. (*Id.*)

Williams alleges that he continues to suffer severe pain in his eye and face, that he experiences headaches, and that his eye gets blurry. (*Id.*) He avers that he was "denied follow up treatment," given the wrong medication, and denied medication, but does not provide any additional details about those allegations. (*Id.*) Williams seeks nominal, compensatory, and punitive damages. (*Id.*)

In support of his claims, Williams also provides allegations against each Defendant. He alleges that Warden Russell "failed" him because Russell is "responsible for all facets of institutional function, which would include facility management, safety, programming, living conditions and adequate medical treatment." (*Id.* at 12.) Williams asserts that Lehigh County Prison failed to "train [its] employees, agents and contractors to provide a safe environment for inmates." (*Id.*) The Unknown Facility Safety Manager also allegedly "failed" Williams by failing to ensure "the living conditions were safe" and failing to "mitigate potential for injuries." (*Id.*) Finally, Williams alleges that the Unknown Medical Supervisor/Contractor "failed" him by denying him medication for his pain, giving him medication that was not prescribed, and withholding treatment from Williams when he was in the restrictive housing unit. (*Id.*)

## II.     STANDARD OF REVIEW

Williams paid the filing fee for this case. Nonetheless, § 1915A requires that the Court "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). In doing so, the Court must dismiss a complaint or any portion thereof that "is frivolous, malicious, or fails to state a claim upon which relief may be granted," *id.* § 1915A(b)(1), or that "seeks monetary relief from a defendant who is immune from such relief," *id.* § 1915A(b)(2).

Whether a complaint fails to state a claim under § 1915A(b)(1) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *See Neal v. Pa. Bd. of Prob. & Parole*, No. 96-7923, 1997 WL 338838, at *1 (E.D. Pa. June 19, 1997); *see also Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999).  Accordingly, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  Conclusory allegations do not suffice. *Id.*  As Williams is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

### III. DISCUSSION

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). To be liable in a civil rights action "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs." *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).  "Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Rode*, 845 F.2d at 1207).

The Court construes the Amended Complaint as raising claims under the Fourteenth Amendment based on the absence of a safety mechanism from the top bunk bed and for

deliberate indifference to his serious medical needs.[2]  These claims fail as pled for essentially the same reasons Williams's claims in his initial Complaint failed.

### A. Claims Against the Lehigh County Prison

Williams has named the Lehigh County Prison as a Defendant.  However, county jails are not "persons" that are "subject to suit under federal civil rights laws." *Regan v. Upper Darby Twp.*, No. CIV A 06-1686, 2009 WL 650384, at *4 (E.D. Pa. Mar. 11, 2009), *aff'd*, 363 F. App'x 917 (3d Cir. 2010).  Accordingly, any claims against the Lehigh County Prison will be dismissed with prejudice because it is not a proper Defendant in this case.

### B. Official Capacity Claims

To the extent Williams intended to pursue claims against the Defendants in their official capacities, these claims fail.  Official capacity claims are indistinguishable from claims against the entity that employs the officials.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690, n. 55 (1978)).  Thus, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.*  Accordingly, Williams's official capacity claims against employees and officials of LCJ are essentially claims against the employing municipality, Lehigh County.

To plead a basis for municipal liability under § 1983, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights.  *See Monell*, 436

---

[2] Since Williams was a pretrial detainee at the time of the relevant events, the Fourteenth Amendment governs his claims.  *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005).  To the extent the Amended Complaint refers to the Fifth or Eighth Amendments, those amendments are inapplicable here.

U.S. at 694. "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009). "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). For a custom to be the proximate cause of an injury, the municipality must have "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to [plaintiff's] injury." *Id.* (internal quotations and alterations omitted). A plaintiff may also state a basis for municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019).

Nothing in the Complaint alleges that the conditions or conduct of which Williams complains was the result of a municipal policy or custom. Although he generally alleges that LCJ failed to train its staff, agents and contractors, this unsupported conclusory allegation is insufficient to plausibly allege a basis for municipal liability. *See Harper v. Cty. of Delaware*, 779 F. App'x 143, 147 (3d Cir. 2019) (per curiam) ("Harper's conclusory allegations of failure to train are deficient as well because he alleged nothing suggesting a failure to train, let alone that the failure was a deliberate or conscious choice." (internal quotations omitted)). Accordingly, Williams has failed to state plausible official capacity claims against the

Defendants. In any event, Williams has failed to allege an underlying constitutional violation, as explained below.

### C. Individual Capacity Claims Based on The Bunk Bed

The Court understands Williams to be pursuing claims based on the absence of ladders for ascending to the top bunk bed, which he indicates was the cause of his fall. The legal concepts governing these claims are the same as those articulated in the Court's May 27, 2021 Memorandum concerning similar claims in Williams's initial Complaint. (ECF No. 6 at 5-7.) To establish a basis for a Fourteenth Amendment violation, a prisoner must allege that his conditions of confinement amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 538 (1979). "Unconstitutional punishment typically includes both objective and subjective components." *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). "[T]he objective component requires an inquiry into whether the deprivation was sufficiently serious and the subjective component asks whether the officials acted with a sufficiently culpable state of mind." *Id.* (internal quotations and alterations omitted).

"[A] 'particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose.'" *Bistrian v. Levi*, 696 F.3d 352, 373 (3d Cir. 2012) (quoting *Stevenson*, 495 F.3d at 68); *Steele v. Cicchi*, 855 F.3d 494, 504 (3d Cir. 2017). In general, to satisfy the subjective component of the analysis in this Circuit, a prisoner must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991); *see also Wilson v. Burks*, 423 F. App'x 169, 173 (3d Cir. 2011) (per curiam) ("'[T]he official must

both be aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw that inference.'") (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)); *cf. Edwards v. Northampton Cty.*, 663 F. App'x 132, 135 (3d Cir. 2016) (per curiam) ("[W]e agree with the District Court and find no reason to apply a different standard here as we have applied the 'deliberate indifference' standard both in cases involving prisoners and pretrial detainees." (internal citations omitted)); *Coleman v. Hodges*, Civ. A. No. 18-1152, 2018 WL 6618459, at *5 (W.D. Pa. Nov. 30, 2018), *report and recommendation adopted*, 2018 WL 6618408 (W.D. Pa. Dec. 18, 2018) ("[T]he minimal scienter requirement under a Fourteenth Amendment conditions of confinement claim appears to be deliberate indifference").

Courts faced with claims similar to Williams's have held that the general absence of a ladder or other safety mechanism for the top bunk in a prison cell at most suggests negligence and does not give rise to a constitutional claim. *See Tindell v. City of Philadelphia*, Civ. A. No. 17-907, 2017 WL 3028598, at *2 (E D. Pa. July 14, 2017) (citations omitted).[3]  Additionally, as

---

[3] *See also, e.g.*, *Mikell v. Harry*, Civ. A. No. 16-2254, 2018 WL 501000, at *5 (M.D. Pa. Jan. 22, 2018) ("Courts have held that the absence of a safety mechanism on the top bunk in a prison cell, or the lack of a bunk bed ladder, at most suggests negligence and does not give rise to a constitutional claim as it does not rise to the level of deliberate indifference."); *Vercusky v. Purdue*, Civ. A. No. 15-2461, 2016 WL 7330589, at *3 (M.D. Pa. Dec. 16, 2016) ("This Court similarly concludes that Plaintiffs allegation that the prison Warden failed to install ladders for access to the top bunks in the SHU at FCI-Schuylkill does not amount to a cognizable constitutional violation."); *Tutora v. Sweeney*, Civ. A. No. 14-4458, 2014 WL 7059086, at *2 (E.D. Pa. Dec. 15, 2014) ("[T]he absence of a ladder or railing from the top bunk does not create an objectively serious condition threatening inmate safety or reflect deliberate indifference on behalf of prison officials."); *Williams v. Corizon*, Civ. A. No. 12-2412, 2013 WL 4787223, at *15 (E.D. Pa. Sept. 9, 2013) ("To the extent that Plaintiff attempts to argue that Defendant City of Philadelphia is liable because they did not have ladders for all the bunk beds, such argument fails, since that is, at most, negligence, which does not demonstrate the requisite culpability for liability to attach."); *Walker v. Walsh*, Civ. A. No. 11-1750, 2012 WL 314883, at *5 (M.D. Pa. Feb. 1, 2012) ("[F]ailing to install safety rails on an upper bunk of a set of bunk beds that is to be exclusively utilized by adults does not constitute a condition which would pose an unreasonable risk of future injury." (internal quotation marks omitted)); *Pumphrey v. Smith*, Civ. A. No. 09-233, 2010 WL 4983675, at *4 (W.D. Pa. Dec. 2, 2010) ("The lack of a bunk ladder in a prison

with the initial Complaint, nothing in the Amended Complaint suggests that any of the Defendants acted with deliberate indifference to Williams's health or safety in connection with the condition of the bunk bed and the absence of a ladder. Accordingly, Williams has not stated a constitutional claim based on the absence of ladders to use for ascending to the top bunk bed in his cell.

### D. Individual Capacity Claims for Deliberate Indifference to Medical Needs

Williams also pursues claims for deliberate indifference to his serious medical needs. The legal concepts governing these claims are also the same as those articulated in the Court's May 27, 2021 Memorandum concerning Williams's claims in his initial Complaint. (ECF No. 6 at 7-8.) To state a claim in the context of medical care, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer*, 511 U.S. at 835. "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). Deliberate indifference has been found "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Allegations of medical

---

cell does not meet the stringent requirements of deliberate indifference."); *see also Franco-Calzada v. United States*, 375 F. App'x 217, 218-19 (3d Cir. 2010) (per curiam) (dismissing appeal as frivolous when plaintiff's constitutional claims rested on allegations that he fell from a faulty ladder attached to his top bunk, which defendants knew or should have known to be unsafe because at least two other inmates had fallen).

malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). Additionally, "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with . . . deliberate indifference." *Id.* at 236.

Williams has alleged a serious medical need for purposes of statutory screening. However, he has not alleged that any of the named Defendants acted with deliberate indifference or were personally involved in the denial, delay, or prevention of follow up care that was ordered by the doctor. Williams does not describe what additional medical care was required, the timing or circumstances of the alleged delay or denial of care, and what role each Defendant played in those events. Absent such allegations, he has not stated a claim against any of the Defendants for deliberate indifference to his serious medical needs.

## IV.   CONCLUSION

For the foregoing reasons, the Court will dismiss Williams's Amended Complaint for failure to state a claim, pursuant to 28 U.S.C. § 1915A(b)(1). Williams will be given one more opportunity to amend in the event he can state a plausible basis for a claim against an appropriate defendant. An appropriate Order follows, which provides further instruction as to amendment.

**BY THE COURT:**

**/s/ Chad F. Kenney**
_____
**CHAD F. KENNEY, J.**